**KAUFMANN & BAER CO. v. HEINER, Collector of Internal Revenue.**

**SAME v. LEWELLYN, Former Collector of Internal Revenue.**

District Court, W. D. Pennsylvania. June 9, 1929.

Nos. 5471, 5472.

Louis Caplan and Smith, Shaw, McClay & Seifert, all of Pittsburgh, Pa., for plaintiff.

J. D. Meyer, U. S. Atty., of Pittsburgh, Pa., C. M. Charest, of Washington, D. C., John A. McCann, of Pittsburgh, Pa., and T. H. Lewis, Jr., of Washington, D. C., for defendant.

SCHOONMAKER, District Judge. These two cases were consolidated and tried together. They involve precisely the same question; the only difference is the amount claimed in each case. The cause of action in each case is based upon the refusal of the Commissioner of Internal Revenue to permit the plaintiff to include, as a part of the statutory invested capital, an alleged paid-in surplus of $2,000,000, claimed by the plaintiff to be the actual cash value of a certain contract of lease between the plaintiff and the trustees of the estate of Henry W. Oli-

ver. The plaintiff is also asking a depreciation deduction of $80,000 per annum from the alleged value of this leasehold estate. Using these two items in making its calculation, the plaintiff alleges that it overpaid its income, war time, and excess profits taxes for the years 1917 to 1925, inclusive, in the amount of $447,287.78, $235,943.08 of which was paid to C. G. Lewellyn, and $211,344.70 of which was paid to D. B. Heiner.

The plaintiff waived a jury trial in both cases, and they were tried before the court without a jury. Proper claim for refundment of all the alleged overpayments were duly filed by the plaintiff and were rejected by the Commissioner. The facts with reference to the lease on which the plaintiff bases its right to a paid-in surplus of $2,000,000 are as follows:

By agreement dated January 28, 1913 (Plaintiff's Exhibit No. 1), the trustees of the estate of Henry W. Oliver agreed with Morris Baer, Theodore Kaufmann, Max L. Blum, Julius Baer, Ludwig Kaufmann, Nathan Kaufmann, and Hugo Baum that they would execute and deliver to the corporation, to be afterwards formed by said Morris Baer and others, lease for certain property in Pittsburgh, Pa., for a term ending March 31, 2014, with the understanding that the trustees of the Oliver estate would erect on the premises a 12-story building suitable for use as a department store. The form of lease to be signed by the corporation was set out in this agreement, and was to be executed on condition that the said Morris Baer et al. would form a corporation with an actually paid-in capital of $1,050,000, and that they would deposit with the Union Trust Company of Pittsburgh the sum of $250,000 as a guaranty that the corporation would be formed as agreed, and that the said corporation, when formed, would execute the lease, a copy of which was attached to this agreement. Thereafter, on the 14th of March, 1913, the corporation known as the Kaufmann & Baer Company was duly formed, and the lease in question was executed by the trustees of the Oliver estate and this corporation under date of April 1, 1913. This lease was for a term of 100 years. The rental for the use of the ground for the first 25 years was fixed at $105,000 per year. For each succeeding 25-year period the ground rent was to be fixed at 4½ per cent. of the actual cash value of the land at the commencement of each 25-year term, to be fixed by appraisers in case the parties were unable to agree. In addition to that, there was rent calculated at 5 per cent. per annum of the actual cost of the building which the Oliver estate was to erect on the premises, not exceeding $1,610,803. The lessee (plaintiff) was also to pay as rent 3 per cent. of the net sales of the corporation in each calendar year in excess of $7,000,000, such rental not to exceed $100,000 annually. The plaintiff was also to keep the building in good order and repair, restore it, if damaged by fire at any time, and keep it insured for $1,100,000, and pay all taxes, assessments, and insurance premiums upon the property. The lease was not assignable, except with the consent of the lessor, other than to a corporation having a legal right to make the purchase, which corporation must have a paid-in capital of $1,500,000 and bona fide assets of a fair value of $1,500,000. In addition to that, the plaintiff was to pay as rent 6 per cent. of one-half of the cost of securing cancellation of existing leases then on the premises, said rental not to exceed $4,500 per annum.

No stock was ever issued by the corporation for this lease. There were no entries upon the plaintiff's books showing any valuation on the lease in question as a part of the capital assets. At the trial, three real estate agents, familiar with property in Pittsburgh in the vicinity of these premises, placed the value of the contract of January 28, 1913, and the lease of April 1, 1913, at approximately $2,000,000, and, taking into consideration modification of the contract on February 20, 1913, which increased the size of the building from 10 to 12 stories, these same real estate agents valued the contract and lease at approximately $2,500,000. This was on the basis only of the first 25-year term. They were unable to place any value on the lease whatever for the whole term, nor for the balance of the term beyond the first 25-year period. This $2,000,000 the plaintiff contends is subject to annual depreciation of $80,000, which sum it is entitled to deduct on account of exhaustion from its real estate.

Under these facts, we conclude that the plaintiff is not entitled to recover. We cannot find any basis on which the plaintiff can value and carry this lease as a paid-in surplus. The statutes under which the plaintiff makes its claim are section 326 (a) (3) of the Revenue Acts of 1918 (40 Stat. 1092) and 1921 (42 Stat. 274), as follows: "Sec. 326 (a) that as used in this title the term 'invested capital' for any year means * * * (3) paid-in or earned surplus and undivided profits * * *."

The facts in this case do not disclose that anything of value was paid in to the corpo-

700

ration in connection with this alleged lease. The incorporators themselves bargained for this lease to be made to the corporation. They did not. assign the lease to the corporation; in the promotion and organization of the corporation the lease was provided for. The Oliver estate insisted that the lease be made with the corporation. The lease was not assignable, except with the consent of the Oliver estate. The lease runs for 100 years. The expert witnesses called by the plaintiff are unable to place any value on the lease for the entire term. It might be true that the lease for the 25-year period only might have the value allotted to it by the witnesses. But the lease is not made for 25 years; it is for 100 years, and may be an intolerable burden for the next 75 years, instead of an asset. There have been no facts proven in the case on which any value could be predicated to this lease, taking into consideration its full term, which would be the only proper way in which to assess an estimate of its value. In order to come within the terms of the statute, the leasehold must have had actual cash value, and the cash value must take into consideration the full term. There was no cash value proven. The lease was made after the 1st of March, 1913, directly with the corporation. According to the bargaining of the parties, the promoters of the corporation never assigned the lease to the corporation. It represented no actual cash investment of any kind; is not carried on the books of the corporation as such. There was nothing paid in to this corporation by anybody, so far as this lease was concerned. The parties themselves negotiating for the lease had in contemplation that it could be performed only by the corporation; and the corporation acquired the lease, not by assignment, but by direct grant from the Oliver estate. The shareholders in the corporation really contributed nothing of value to the corporation, so far as this lease is concerned.

The position we have taken is supported by the Circuit Court of Appeals, Fourth Circuit, in Kleeson v. Blair, 28 F.(2d) 557. The views we have taken here, and those expressed by the Fourth Circuit are in entire accord with the Supreme Court in the case of La Belle Iron Works v. U. S., 256 U. S. 382, 388, 41 S. Ct. 528, 530, 65 L. Ed. 998, as follows:

"In order to adhere to this restricted meaning and avoid exaggerated valuations, the draftsman of the act resorted to the test of including nothing but money, or money's worth, actually contributed or converted in exchange for shares of the capital stock, or actually acquired through the business activities of the corporation or partnership (involving again a conversion) and coming in ab extra, by way of increase over the original capital stock. How consistently this was carried out becomes evident as the section is examined in detail. Cash paid in, and tangible property paid in other than cash, are confined to such as were contributed for stock or shares in the corporation or partnership; and the property is to be taken at its actual cash value 'at the time of such payment'—distinctly negativing any allowance for appreciation in value."

This being our conclusion as to the alleged value of the leasehold estate, it follows as a matter of course that there is no depreciation on account of the exhaustion which should be allowed to the plaintiff under the provisions of section 234 (a) (7) of the Revenue Acts of 1918 (40 Stat. 1078), 1921 (42 Stat. 255), and 1924 (43 Stat. 284, 26 USCA § 986 (a) (7).